Santi Amoroso, Respondent, *v.* The Sea Insurance Company, Ltd., Appellant.

Insurance (marine) — contract — warranty — damage to cargo from delay of vessel through arrest by civil authorities — no recovery where policy contains provision by assured warranting vessel free from arrest.

Damage to the cargo of a vessel from delay in transportation by reason of detainment of the vessel by civil authorities after its collision with another cannot be recovered under a policy of marine insurance providing that the company shall be " liable for decay, must or mold, etc., which may reasonably be supposed to have occurred in consequence of the * * * collision of the vessel or through delay resulting therefrom," where it contains an additional clause whereby the assured warranted the ship free from " arrest, restraint or detainment and the consequences thereof * * * by civil authority."

*Amoroso* v. *Sea Insurance Co.*, 218 App. Div. 831, reversed.

(Argued May 18, 1927; decided May 31, 1927.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 29, 1926, affirming a judgment in favor of plaintiff entered upon a verdict.

*Theodore L. Bailey, William D. Stiger* and *Loring R. Lecraw* for appellant. The damage to the lemons, if occasioned by the libel and arrest at Gibraltar, was by a cause expressly excepted in the policy. (*Bradlie v. Maryland Insurance Co.*, 12 Pet. 378; *The Coventina*, 52 Fed. Rep. 156; 1 Arnould on Marine Insurance [9th ed.], §§ 843, 905; *Powell* v. *Hyde*, 5 E. & B. 607; *Kleinwort* v. *Shepard*, 1 E. & E. 447; *Cory* v. *Burr*, 9 Q. B. D. 463; *Robinson Gold Mining Co.* v. *Alliance Ins. Co.*, [1904] App. Cas. 359; [1902] 2 K. B. 489; *Miller* v. *Law Accident Ins. Co.*, [1903] 1 K. B. D. 712; [1902] 2 K. B. 694; *Swinnerton* v. *Columbia Ins Co.*, 37 N. Y. 174; *Ins. Co.* v. *Transportation Co.*, 12 Wall. [U. S.] 194; *Boland's, Ltd.*, v. *London & Lancashire Fire, etc., Co.*, [1924] App. Cas. 836; *Aktiebolaget, etc., Bank* v. *American Merchant Marine Ins. Co.*, 241 N. Y. 197.) If it be assumed, for purposes of argument only, that the damage here was due to delay caused by seizure or arrest and resulting from the collision, nevertheless the marginal warranty clause, " free from seizure, arrest, restraint or detainment and the consequences thereof or of any attempt thereat * * * by civil authority or by any person or persons whatsoever * * * " is effective to exempt the defendant here from liability. (*Stoomvaart Maatschappij Sophie H.* v. *Merchants' Marine Insurance Company, Ltd.*, 89 L. J. K. B. 834; 122 L. T. 295, *Aktiebologet, etc., Bank* v. *American Merchant Marine Ins. Co.*, 241 N. Y. 197; *Shamrock Towing Co.* v. *American Ins. Co.*, 9 Fed. Rep. [2d] 57.) The damage, if occasioned as claimed by plaintiff, is not the proximate result of collision. (*The Xantho*, L. R. [12 App. Cas.] 503; *Bird* v. *St. Paul F. & M. Ins. Co.*, 241 N. Y. 47; *Queens Ins. Co.* v. *Globe & Rutgers Ins. Co.*, 263 U. S. 486; *Leyland Steamship Co.* v. *Norwich Union Fire Ins. Society, Ltd.*, [1918] App. Cas. 350; *Ins. Co.* v. *Transportation Co.*, 12 Wall. 194; *St. John* v. *American Mutual Fire & Marine Ins. Co.*, 11 N. Y. 516; *McAlister & Co., Inc.*, v. *Western*

*Assurance Co.*, 218 App. Div. 564; *Brandyce & Co.* v. *U. S. Lloyds, Inc.*, 207 App. Div. 665; 239 N. Y. 573.)

*Eugene E. Kelly* for respondent. The policy covers the loss. The collision at Gibraltar was the proximate cause of the ship being libeled and held; and such delay caused the decay and resulting loss. (*Brandyce* v. *United States Lloyds, Inc.*, 207 App. Div. 665; *Pink* v. *Fleming*, L. R. 25 Q. B. Div. 396; *Brown* v. *St. Nicholas Ins. Co.*, 61 N. Y. 332; *Muller* v. *Globe, etc., Fire Ins. Co.*, 246 Fed. Rep. 759; 159 C. C. A. 61; Benedict on Admiralty [5th ed.], §§ 135, 226; *Carrol Towing Co., Inc.*, v. *Ætna Ins. Co.*, 203 App. Div. 430; *Newtown Creek Towing Co.* v. *Ætna Ins. Co.*, 163 N. Y. 114; *Lehigh & Wilkes-Barre Coal Co.* v. *Globe & Rutgers Fire Ins. Co.*, [1925] 2 Fed. Rep. 736; *London Assurance* v. *Companhia De-Moagens DoBarrerio*, 167 U. S. 149; *Fiske* v. *Spring*, 25 Hun, 367.) The printed " warranty " or exception clause, relied on by defendant, does not bar a recovery, because it does not include proceedings of a civil nature to enforce private rights. (38 Corpus Juris, 1064, 1104.)

CRANE, J. In the month of December, 1922, the firm of Puccio & Sternheim shipped from Palermo, Italy, 2,040 boxes of lemons via the steamship *Lancastrian*, to the port of New York. On or about February 8, 1923, the bill of lading for said boxes of lemons was purchased by the plaintiff through bankers in New York city, and he thereupon procured from the Sea Insurance Company, Ltd., the defendant in this action, the policy of insurance upon which he has brought this action. At the time of the insurance the vessel and its cargo were on the way to New York. The chronological order of the events from the time the lemons were delivered to the steamship company until the vessel arrived at New York city is as follows: On December 22, 1922, the lemons were delivered to the steamship company at Palermo, for shipment on

the *Lancastrian.*  On January 17, 1923, the *Lancastrian* sailed from Palermo, putting into Gibraltar three days later, January 20, for provisions and coal.  On January 24 a sudden squall sprang up, and the *Lancastrian* drifted alongside the oil hulk *Dragon.*  Either the ship dragged her anchor, or else the anchor broke.  The *Lancastrian* waited until the wind died down, then steamed to another anchorage.  Other than the tearing of the jigger mast shrouds, no damage was done to the *Lancastrian.*  The *Dragon,* however, appears to have been damaged, for the next day, January 25, the *Lancastrian* was libeled for 5,000 pounds, later reduced to 2,000 pounds.  A bailiff was put aboard the *Lancastrian* by the marshal of the Supreme Court of Gibraltar.  On February 8 the insurance policy was taken out, as above stated.  The vessel was released from arrest on February 16, but did not sail till the following week, February 23, arriving at New York March the 13th.

The average length of time for a fruit freighter to make the voyage from Palermo to New York is twenty days.  The *Lancastrian* took about fifty-five days, without considering that the lemons were delivered to the steamship company on December 26.  Fifty-five days make about eight weeks, and the average life of a lemon is from nine to ten weeks.  The lemons on arrival in New York were found to be damaged by reason of delay in transportation, and it is for this damage that the plaintiff has brought this action on the insurance policy.  The defendant has resisted payment upon the ground that the cause of the damage is not one of the risks insured against; that the cause of the delay does not come within the terms of, but within the exceptions of the policy.

The delay, says the plaintiff, which caused the damage to the lemons was due to the collision of the *Lancastrian* with the *Dragon,* whereas the defendant insists that the libel or arrest of the vessel was the cause, or a cause excepted from the policy.  Although the defendant takes

1927.]            Opinion. per CRANE, J.        [245 N. Y. 329]

the position that the arrest was not the cause of the delay, yet it claims that if the plaintiff is right and the arrest did cause the delay, then this arrest by civil authorities is one of the things specifically excepted from the risks insured against.

The policy being a marine insurance policy, is in the usual form with a rider covering special and additional risks. The Sea Insurance Company, Ltd., of Liverpool, makes insurance, lost or not lost, on merchandise shipped by the assured " touching the adventures and perils * * * of the seas, men-of-war, fires, enemies, pirates, rovers, assailing thieves, jettisons, letters of mart and countermart, reprisals, takings at sea, arrests, restraints and detainments of all kings, princes or people, of what nation, condition or quality soever, barratry of the Master and Mariners, and all other perils, losses and misfortunes, that have or shall come to the hurt, detriment or damage of the said goods and merchandises, or any part thereof." The rider attached to the policy also contains these words: " This company shall also be liable for decay, must or mold, etc., which may reasonably be supposed to have occurred in consequence of the stranding, sinking, burning or collision of the vessel or through delay resulting therefrom." Arrest or detainment by civil authority apparently is not within the risks touched by the policy.

The policy contains a number of exceptions or warranties upon the part of the assured. One of them reads as follows: " Warranted free of capture, seizure, arrest, restraint, or detainment, and the consequences thereof or of any attempt thereat and whether as an act of war or by civil authority or by any person or persons whatsoever, lawless or otherwise, piracy excepted."

Having the incidents of the voyage of the *Lancastrian* and the terms of this policy of insurance, let us put the two together and see whether the defendant insured the

plaintiff against the delay which caused the damage to his lemons.

The *Lancastrian* drifted into or bumped the oil hulk, *Dragon.* Neither the *Lancastrian* nor its cargo was damaged so as to cause any delay. The vessel could have proceeded on its way to New York at once, so far as the evidence in this case shows. No delay was caused by the collision, if we interpret the words of the rider according to the *ejusdem generis* rule. The rider says: " liable for decay * * * supposed to have occurred in consequence of the stranding, sinking, burning or collision of the vessel or through delay resulting therefrom; " that is, delay resulting from stranding, sinking, burning or collision of the vessel, which to my mind indicates that the collision must have damaged the vessel so as to cause delay. Nothing happened to the vessel which prevented it from proceeding on its voyage; it was in as fit condition before as after collision. No such results as are caused by sinking, stranding, burning or collision stopped the vessel in its course. By reason of the damage to the *Dragon,* the vessel was arrested. Of course, the arrest was due to the collision, but the delay, to my mind, was caused by the arrest, and not by a collision, within the meaning of the rider. The arrese was a distinct intervening cause but for which the vesstl would not have been delayed one day. In *Queen Ins. Co.* v. *Globe & Rutgers Fire Ins. Co.* (263 U. S. 487) it was said in speaking of a policy of insurance on a cargo against war risks: " On the other hand the common understanding is that in construing these policies we are not to take broad views but generally are to stop our inquiries with the cause nearest to the loss. This is a settled rule of construction, and, if it is understood, does not deserve much criticism, since theoretically at least the parties can shape their contract as they like." (*Bird* v. *St. Paul F. & M. Ins. Co.,* 224 N. Y. 47; *Insurance Company* v. *Transportation Company,* 12 Wall. [U. S.] 194.)

But whether this be so or not, we are all agreed that the delay from the arrest which the plaintiff says caused the damage to the lemons was specifically excepted from the policy. If it were not for this exception, it might be that the policy and the rider were broad enough to cover a delay caused by an arrest arising out of a collision even though the vessel and the cargo were in no way damaged. The exception, however, narrows this liability. The assurer warrants that the ship will be free from arrest, restraint or detainment and the consequences thereof by civil authority. Here was an arrest by a civil authority for a period of about three weeks which the plaintiff claims caused the lemons to mold and spoil. The cause of the damage is within the exception or warranty free clause, and not within the covering provisions. (*Swinnerton* v. *Columbian Insurance Co.*, 37 N. Y. 174; *Aktiebolaget M. Bank* v. *A. M. M. Ins. Co.*, 241 N. Y. 197; *Insurance Co.* v. *Transportation Co.*, 12 Wall. [U. S.] 194; *London & Lancashire Fire, etc., Co.* v. *Bolands, Ltd.*, L. R. [1924] App. Cas. 836; *Powell* v. *Hyde*, 5 E. & B. 607; *Cory* v. *Burr*, 9 Q. B. D. 463; affirmed, House of Lords, L. R. [1882] 8 App. Cas. 393; *Robinson Gold Mining Co.* v. *Alliance Ins. Co.*, L. R. [1904] App. Cas. 359.)

There is also a serious question arising on the evidence whether the plaintiff proved that the delay as a fact was caused by the arrest. The ship was short of coal and provisions. Arrangements had to be made to get the money to pay for both. The coaling went on at intervals up to the time of sailing, February 23, 1923. The ship did not sail for a week after being released from arrest because the requisite amount of coal had not been bunkered. One hundred and eighty-five tons were put aboard thereafter. The delivery of the coal and provisions was not retarded by the libel but by the lack of funds. It took time to make satisfactory financial arrangements. Harold G. Towler, of the London Coal Company, testified: " On February 10, 1923, we were advised by the firm's

London office that sufficient funds had been deposited with the firm's New York office to cover about 625 tons of coal. On February 15, 1923, the said firm was likewise advised that their New York office had received a further deposit which covered approximately 105 tons of coal. On February 21, 1923, the said firm received another advice that funds for a further 80 tons of coal (making a total of 810 tons) had been received." The ship was released, as I have above stated, on February 16, 1923. This witness also stated that the libel did not cause the delay in furnishing the coal.

Whether there be any evidence, however, to sustain the finding of fact that the delay was caused by the arrest and collision, and not by the lack of coal and supplies, we need not determine, as we agree that the delay, if caused by the arrest, came within the warranty free clause referred to, making it a risk assumed by the assured and not by the defendant.

The judgment of the Appellate Division and that of the Trial Term should, therefore, be reversed and the complaint dismissed, with costs in all courts.

CARDOZO, Ch. J., POUND, ANDREWS, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Judgment accordingly.