**TRANSIT CASUALTY COMPANY,**
Libellant,

v.

**UNITED STATES of America,**
Respondent,

v.

**T. L. BISHOP, d/b/a Bishop Marine Service, Impleaded Respondent.**

No. 63–C–4.

United States District Court
S. D. Texas,
Corpus Christi Division.

March 11, 1965.

Kleberg, Mobley, Lockett & Weil and R. W. Woolsey, Corpus Christi, Tex., for libellant.

Allan J. Weiss, Admiralty & Shipping Section, Dept. of Justice, Washington, D. C., and Woodrow Seals, U. S. Atty., and Jack Shepherd, Asst. U. S. Atty., Houston, Tex., for respondent.

Ellis & Andrews and Wm. L. Ellis, Aransas Pass, Tex., for impleaded respondent.

GARZA, District Judge.

This is an action in personam in which the United States of America seeks indemnity from T. L. Bishop, d/b/a Bishop Marine Service.

Respondent, United States of America, settled with the original libellant, Transit Casualty Company, under an agreed judgment by which Respondent paid to Libellant the sum of $10,025.00. Remaining for decision is the action by Respondent against the Impleaded Respondent for indemnity.

On September 13, 1961, the shrimp boat O/S CAREY was seized by the Deputy U. S. Marshal pursuant to a warrant of arrest issued in an Admiralty case filed in the Houston Division of this Court. The vessel was seized at the Municipal Dock at Aransas Pass, Texas, by the marshal who then went to Bishop Marine Service in Aransas Pass and made an oral agreement with T. L. Bishop to have the vessel moved to the marine service dock, there to be safely kept.

Hurricane CARLA had caused considerable damage to this area of the Texas coast shortly before, and Bishop's shipyard and docks were damaged and littered with debris, all of which was plainly visible and was seen by the marshal.

The vessel was towed to the shipyard and was approaching the dock when the marshal left. The CAREY was tied to the dock, and was given a final check by Mr. Bishop's son to see that all was se-

cure. The presence of the vessel was made known to Bishop's night watchman was was told to keep an eye on it and in case of anything unusual to notify T. L. Bishop.

During the early morning of September 14, 1961, the night watchman, who was asleep in a building on the premises, was awakened and went out on the porch where he saw that a fire was burning on the CAREY. Using the telephone in his room, he was unable to contact the Fire Department, but called the police who notified the Fire Department. He made no effort himself to extinguish the fire. In fact, the evidence showed that the water lines to the dock area had been rendered inoperable by the hurricane and the portable fire-fighting equipment was locked in a warehouse to which he had no key.

The Fire Department arrived, attached its hose to a city hydrant on the street near the shipyard, and after encountering some difficulty in reaching the CAREY, finally extinguished the fire, which by then had caused extensive damage.

The firemen were required to take their hose over debris; and since the dock was blocked by the hull of another ship which had been deposited thereon by high water, had to wade through the water alongside the dock to reach the burning vessel.

At the time the CAREY burned, her record owner, Vernon Crotts, had a policy of hull insurance issued by Libellant, Transit Casualty Company, which paid to the insured the sum of $20,000.00, and under its claimed right of subrogation brought this action against the United States, alleging negligence of the marshal in failing to keep the vessel safe while in custody.

Respondent thereafter impleaded Bishop, alleging the breach of his implied warranty of workmanlike and skilled services in the safekeeping of vessels.

When the United States determined to settle with Libellant, it transmitted to proctors for Bishop a "Vouching In" letter in which it demanded that Bishop assume the defense of the suit on behalf of the United States and to hold the United States harmless from liability to Libellant. This, the proctors for Bishop refused to do on the grounds that neither the United States nor Bishop was liable for any negligence, and, further, the requirement that Bishop hold the United States harmless would have placed Bishop in the position of assuming liability for any negligence of the marshal which might be found.

After the settlement between Libellant and Respondent, the remaining action for indemnity between the United States and Bishop was tried before the Court.

The United States contends that it was exposed to a potential liability of at least $16,000.00, the appraised value of the CAREY; that its settlement was reasonable; that Bishop's breach of warranty through negligence was the proximate cause of the CAREY's destruction; and that it is entitled to indemnity.

Bishop does not contest the reasonableness of the settlement figure, but does contend that the United States was not liable to Transit Casualty Company in the first place; and, even if so, such liability was not brought about by any negligent acts or omissions of Bishop.

The bailment which results when a vessel is placed at a wharf or dock for storage imposes upon the bailee the duty of ordinary care. The bailor has the burden of proof of negligence, but makes out a prima facie case by showing delivery of a vessel in good condition and damage while in the bailee's possession. The bailee then has the duty to go forward with the evidence and show that he exercised ordinary care. When this is done, the bailor must then prove acts of negligence proximately causing the loss in order to sustain the burden of proof which upon the whole evidence remains upon the bailor throughout. Stegemann v. Miami Beach Boat Slips, 213 F.2d 561, 5th Cir., 1954; Niagra Fire Insurance Co. v. Dog River Boat Service, Inc., 187 F.Supp. 528, D. C., S.D.Ala., 1960; Sisung v. Tiger Pass

Shipyard Co., 303 F.2d 318, 5th Cir., 1962.

In the Sisung case, involving a suit for negligent mooring of a vessel which was rammed during the night by an unknown craft, it was held that the bailee may overcome the inference of negligence arising from proof of delivery in good condition and return in damaged condition by telling all that it knows of the casualty and showing the exercise of ordinary care.

> "This burden, unlike that of persuasion which rested at all times on appellants, simply required appellee to go forward with evidence sufficient to show that it had no more knowledge of the cause of the casualty than was available to appellants and that it exercised ordinary care. At this juncture the burden of going forward would shift back to appellants to ultimately persuade the trier of the facts of negligence on the part of appellee proximately causing the casualty."—Sisung v. Tiger Pass Shipyard Co., supra, at p. 322.

■ This Court believes that the Government failed to sustain its burden of proving that Bishop was guilty of any negligence which proximately caused this casualty.

The bailment involved herein was created by an informal oral contract which arose when the marshal, who was fully cognizant of Bishop's state of disrepair, requested that Bishop keep the CAREY for him.

No question is presented here as to any negligence on the part of the marshal, for the indemnity sought by the Government could only be granted if Bishop were negligent and that negligence was a proximate cause of the loss. The Court, therefore, sees no need to determine Respondent's liability to Transit Casualty Company, except in so far as such liability might have been created by a breach of duty on the part of Bishop.

The cases cited by the Government in support of its claim for indemnity because of a reasonable settlement following potential liability all support this Court's holding that indemnity is a proper remedy where the secondary liability of the indemnitee is created by the indemnitor.

Chicago, Rock Island & Pacific Ry. Co. v. Doby Flour Mills, 211 F.2d 785, 10th Cir., 1954, is relied on by the Government in support of the rule that when the indemnitor denies liability and refuses to assume the defense, then the indemnitee is in full charge of the matter and may make a good faith settlement without assuming the risks of being able to prove absolute liability or the actual amount of damage. That suit, however, was a claim upon an indemnity contract by which the indemnitor had entered into a written agreement to indemnify and hold harmless the indemnitee for its own negligence.

No such contract exists here, and in fact the alleged indemnitor, Bishop, specifically refused to make any such agreement.

The lack of water and lights at the shipyard, the debris and wrecked hull on the dock and premises, the lack of available fire-fighting equipment, the failure of the watchman to make regular inspections, and the failure of the watchman to keep the vessel under surveillance, all are alleged to be acts or omissions constituting negligence and breach of duty on the part of Bishop; but neither one nor all of said acts or omissions where shown by the evidence to have proximately caused the damage to the CAREY. Any attempted finding as to the cause or origin of the fire aboard the vessel would be pure speculation, as would an effort to determine how much sooner the firemen would have been required to reach the vessel in order to minimize the loss which occurred.

The Government not having sustained its burden of proof in this case, it

is not entitled to indemnity from the shipyard for the loss of the vessel.

Therefore, judgment for Impleaded Respondent, T. L. Bishop, d/b/a Bishop Marine Service, is being entered this date.