### INTERMONDALE TRADING CO. v. NORTH RIVER INS. CO. OF NEW YORK.

United States District Court
S. D. New York.
March 15, 1951.

Eugene R. Pickrell and Michael Stramiello, Jr., New York City, for plaintiff.

Bigham, Englar, Jones & Houston, Martin P. Detels and Vincent L. Leibell, Jr., New York City, for defendant.

GODDARD, District Judge.

The plaintiff, a Swiss corporation, sues to recover for the alleged loss of 6,860 scrap rubber tires which were insured by the defendant in the sum of $38,343 against certain perils and upon certain conditions for a voyage from Jacksonville, Florida, to Genoa, Italy.

Plaintiff claims that the tires were loaded aboard the S.S. Colony Trader at Jacksonville, Florida, on April 27, 1947. En route to Genoa, the vessel called at the Port of Gibraltar where she was detained and prevented from proceeding to her port of destination on orders of the Governor of Gibraltar for the reason that the said vessel was being, or was intended, or was likely to be used for the purpose of conveying to Palestine persons whose entry thereto would be contrary to the law in force in Palestine. The detention of the vessel continued from May 23, 1947 to November 20, 1947, at which time the vessel was released by further order of the Governor of Gibraltar and proceeded to Piraeus, Greece. She arrived there on or about December 3, 1947.

On July 7, 1947, while the S.S. Colony Trader was still detained at Gibraltar, the plaintiff served upon the defendant a written abandonment of the insured cargo because of the detention of the S.S. Colony Trader. By letter dated July 11, 1947, the defendant declined to accept this abandonment.

While detained at Gibraltar and some time prior to September 30, 1947, the S.S. Colony Trader was sold to one John Lydikes, a Greek National, and renamed the "Ochi". The new owner cabled the plaintiff's agent requesting instructions as to the desired disposition of the tires. The new owner warned that the tires would remain aboard "at your sole risk and expense as steamer will sail ex Gibraltar very shortly reply urgent". The plaintiff took no steps to protect his tires.

The vessel then sailed to Piraeus, Greece, where the owner of the vessel, in accordance with Greek law, applied to a Greek court for an order to sell the cargo to pay for the freight. The Greek court issued such an order and the vessel owner sold

the cargo, including the tires, at public auction.

The plaintiff seeks to recover on two grounds. He contends that he suffered either (1) a total constructive loss and had a right to abandon, or (2) he suffered an actual total loss. Defendant urges that recovery by plaintiff is barred by certain conditions and warranties set forth in the insurance policy.

■ In order to recover, the plaintiff has the burden of proving that the alleged loss comes within the terms and conditions of the policy. Imperial Fire Insurance Co. v. Coos County, 151 U.S. 452, 14 S.Ct. 379, 38 L.Ed. 231.

The defendant urges that the plaintiff has failed to prove that the tires were shipped on board the S.S. Colony Trader.

To prove shipment, the plaintiff produced as a witness the president of the concern that sold the tires to the plaintiff. He testified that his company sold 6,860 tires to the plaintiff and that he saw at least half of the tires loaded aboard the S.S. Colony Trader. Although his testimony cannot be taken as direct proof that 6,860 tires were loaded aboard that vessel, it is good proof that at least a large part of the 6,860 tires were loaded aboard.

■ The plaintiff offered in evidence copies of two bills of lading and this witness testified that he had received these copies with the original bills of lading from the shipping company when he delivered the tires; that he had given the originals to a bank in order to receive payment for the tires that had been delivered. One of the bills of lading recited receipt of 1,710 tires and was initialed by the master; the other recited receipt of 5,150 tires and was not signed or initialed by any one. The defendant objected to their being admitted into evidence on the ground that they are hearsay as to the defendant. That may be so. Nevertheless, I think they are admissible as records made in the regular course of business. 28 U.S.C.A. § 1732; Ulm v. Moore-McCormack Lines, Inc., 2 Cir., 115 F.2d 492, rehearing denied, 2 Cir., 117 F.2d 222, certiorari denied 313 U.S. 567, 61 S.Ct. 941, 85 L.Ed. 1525; Hunter v. Derby Foods, Inc., 2 Cir., 110 F.2d 970, 133 A.L.R. 255. The fact that the one document was unsigned is immaterial. The witness testified that it was a copy of the original and the absence of the original was explained.

■ The plaintiff also offered in evidence a document entitled "Outward Foreign Manifest" and which was signed under oath by the master of the S.S. Colony Trader. This showed that 6,860 tires were aboard the vessel when it sailed on the voyage in question. The document offered was a certified copy of the manifest that the master was required by law to file with the Collector of Customs under the provisions of 46 U.S.C.A. § 92. This document may also be hearsay evidence but it is admissible as evidence under Rule 44 of the Federal Rules of Civil Procedure, 28 U.S.C.A., and by the provisions of 28 U.S. C.A. § 1732. This document was also made and filed in the regular course of business.

■ The same rule and statute make admissible another document that showed that the plaintiff shipped 6,860 tires on the S.S. Colony Trader. This document was a photostatic copy of a "Shipper's Export Declaration" that was filed with the Deputy Collector of Customs at Jacksonville, Florida. This was also required by law. The copy offered was certified by the Deputy Collector of Customs at Jacksonville to be a true copy of the original on file in that office. This original document was also made and filed in the regular course of business.

■ Proof of shipment of the tires on board the S.S. Colony Trader is not as simply shown as perhaps it might be, but I think there is a prima facie proof of delivery and no proof to the contrary has been offered.

■ However, there are reasons why there can be no recovery in this case. The plaintiff contends that the carrier was under a duty to tranship the goods when the ship was detained at Gibraltar; that the carrier's failure to tranship resulted in a total constructive loss; that the clause of the insurance policy that insured "against

all risks of physical loss and/or damage from any external cause" covered this loss. But there was no evidence introduced at the trial of any physical loss or damage to the tires in question.

The principal cause of any loss, if any, suffered was the detainment by the Governor of Gibraltar and this is not a risk covered by the insurance policy. The clause relied upon by the plaintiff in its entirety provides—"Again all risks of physical loss and/or damage from any external cause, irrespective of percentage, but *excluding those risks excepted by the Free of Capture & Seizure* and Strikes, Riots and Civil Commotions *warranties* unless otherwise especially noted hereon." [Emphasis supplied.]

The "Free of Capture & Seizure" warranty referred to provides—"Notwithstanding anything herein contained to the contrary, this insurance is *warranted free from* capture, *seizure, arrest, restraint, detainment,* confiscation, preemption, requisition or nationalization, and the consequences thereof or any attempt thereat, whether in time of peace or war and whether lawful or otherwise; also warranted free from all consequences of hostilities or warlike operations [whether there be a declaration of war or not]." [Emphasis supplied].

It seems clear that this warranty is a complete defense to the plaintiff's claim.

■ Even if we were to assume to be correct the plaintiff's argument that the controlling cause of the loss was the carrier's failure to tranship, the defendant must still prevail. The insurer is not liable for the negligence of the master or crew unless such conduct amounts to barratry. General Mutual Insurance Company v. Sherwood, 14 How. 351, 14 L.Ed. 452. There was no barratry in this case. In order to constitute barratry, the act of the master or mariners must be against the owners of the ship. 1 Phillips on Insurance, § 1077. There was no allegation nor was there any evidence produced that the master or mariners performed any act detrimental or contrary to the orders or wishes of the owners of the vessel.

■ Moreover, the "sue and labor" clause in the insurance policy also bars relief to the plaintiff. It provides— " * * * And in case of any loss or misfortune it shall be lawful and necessary to and for the assured, his [their] factors, servants and assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the said goods and merchandises, or any part thereof, without prejudice to this insurance * * *".

Referring to such a clause, Winter on Marine Insurance, 2nd Ed. p. 356, states— "It is the duty of an assured, by implication of law and by contract under the sue and labor clause, to use the utmost endeavor, in the event of casualty overtaking his property, to preserve it and to prevent its becoming absolutely worthless. The measure of duty that is placed upon him in this respect is that action which a prudent uninsured owner would take under similar circumstances. * * *".

■ This clause imposed an absolute obligation on the plaintiff to attempt to preserve his property. The plaintiff was aware of the fact that the S.S. Colony Trader was detained at Gibraltar. When the new owner bought the vessel, he notified the plaintiff's agent that the tires would remain aboard at the plaintiff's risk and expense in the absence of requested instructions as to the disposition of the tires. The plaintiff made no effort whatsoever to protect its tires but was content to merely send a notice of abandonment to the defendant. This is not enough to meet the duty imposed by the contract. Since it made no effort to fulfill its legal obligations, the plaintiff may not now seek to burden the insurer with any alleged loss that the plaintiff itself might have prevented by diligent effort.

■ Furthermore, there is another warranty in the insurance policy that bars relief to the plaintiff. This is the warranty: "not to abandon [on any ground other than physical damage to ship or cargo] until after condemnation of the property insured."

Since there was no physical damage to the cargo and since the tires were never condemned, the plaintiff could not abandon.

Judgment for defendant. Complaint dismissed. Settle order on notice. Defendant may submit proposed findings of fact and conclusions of law.