**RESIN COATINGS CORP., Plaintiff,**

v.

**FIDELITY AND CASUALTY COMPANY OF NEW YORK, Defendant,**

v.

**SAUDI NATIONAL LINES, Third Party Defendant.**

**No. 79–2782–CIV–EPS.**

United States District Court,
S. D. Florida,
Miami Division.

April 1, 1980.

Gerhardt A. Schreiber, Miami, Fla., for plaintiff.

Rodney E. Walton, William B. Milliken, Miami, Fla., for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT

SPELLMAN, District Judge.

This cause is before the Court on motion of defendant Fidelity and Casualty Company for summary judgment on insurance policies issued by it to plaintiff Resin Coatings. This Court finds no genuine issue as to any material fact and therefore defendant is entitled to judgment as a matter of law.

The facts in brief are as follows: Plaintiff Resin Coatings sent a shipment of resin to Damman, Saudi Arabia in 1977. The transporting ship, owned by third party defendant Saudi National Lines, cancelled the Damman stop and offloaded the goods on the other side of the Arabian peninsula at Jeddah, Saudi Arabia early in September of 1977.

Resin Coatings received a telegraph from its consignee on September 7, 1977, informing it that the shipment had gone to Jeddah instead of Damman, and also telling the company that the documents necessary to release the goods from Arabian Customs were not available. The consignee warned Resin Coatings on September 21 that a delay in getting the goods released could result in the resin shipment being sold at an auction by Arabian Customs. Resin Coatings repeatedly requested its bank to forward the necessary documents, bills of lading, to the consignee's Arabian bank, but by December 9, 1977, the documents had not arrived in Saudi Arabia.

The goods were later sold because of the failure to withdraw them from Arabian Customs. This sale apparently didn't take place until March, 1978, about six months after the goods arrived on the Arabian peninsula.

Fidelity had issued two policies covering the shipment, Marine Open Cargo Policy No. OCH IT 00 37 and War Risk Policy No. WRH IT 00 37. Plaintiff demanded payment for the loss of the shipment, and defendant refused, contending that Resin Coatings was precluded from recovery because of the exceptions in each policy. Fidelity has moved for summary judgment on these grounds.

## I. LIABILITY IS PRECLUDED UNDER THE FC&S CLAUSE

■ Paragraph 29 of the Open Cargo policy contains a Free from Capture and Seizure Clause ("FC&S clause"). This clause states that "Notwithstanding anything herein contained to the contrary, this insurance is warranted free from capture, seizure, arrest, restraint, detainment, confiscation . . . ." Under this clause, when the insured warrants that the ship or goods in question shall be free from capture or seizure, the effect is that the insured is excluding coverage in the event either takes place. *Intermondale Trading Co. v. North River Insurance Co.*, 100 F.Supp. 128, 132 (S.D.N.Y.1953).

The question before this Court is whether the actions of Arabian Customs constituted a seizure or capture within the meaning of this clause. Courts that have considered similar FC&S clauses in comparable situations have held such a loss is excluded by the clause. *See Nakasheef v. Continental Insurance Co.*, [1954] A.M.C. 986 (S.D.N.Y. 1953); *Intermondale Trading Co.*, *supra*; *Amoroso v. Sea Insurance Co.*, 245 N.Y. 329, 157 N.E. 156, 219 N.Y.S. 770 (1927).

■ Viewing the record in this cause, this Court holds that the actions of Arabian Customs constituted a seizure within the meaning of the FC&S clause, and that the seizure was proximately caused by the failure of plaintiff to forward the proper documents to Saudi Arabia. The record clearly reflects that as of December 9, 1977, the documents had not arrived at either Jeddah or Damman. Under these circumstances,

the goods would have been seized even if they had been delivered to the proper port at Damman instead of Jeddah as had been originally contracted. Therefore, the seizure of the goods and their sale by Arabian Customs was brought about at the fault of plaintiff and was a seizure within the meaning of the FC&S clause, thus liability may not be asserted against the insurance company under these circumstances. *Intermondale Trading Co., supra* at 132.[1]

■ In addition to arguing that the FC&S clause does not preclude recovery, plaintiff also contends that the warehouse-to-warehouse coverage given in Paragraph 13 of the Open Cargo policy, or the coverage during a deviation allowed by Paragraphs 14 and 16 of the same policy overrides the FC&S clause. Those paragraphs only define the time period of the policies. Both Paragraphs 13 and 14 refer to coverage which "attaches from the time the goods leave the warehouse . . ." and continues until the goods are delivered to their final warehouse. The interpretation urged by Resin Coatings must be rejected in view of the language in Paragraph 29, which states "notwithstanding anything herein contained to the contrary." Therefore, by its own terms the FC&S clause takes precedence over the warehouse-to-warehouse coverage.

## II. THE WAR RISK POLICY DOES NOT APPLY

Resin Coatings' contention that the War Risk Policy covers the present situation is also in error. Paragraph 3 of that policy specifies that "this insurance does not cover any loss or damage caused by or resulting from . . . [s]eizure or destruction under quarantine or Customs regulations." Since this Court has found a seizure within the meaning of the insurance contract, the plain language of this paragraph excludes coverage. *See Panamanian Oriental Steamship Corp. v. Wright,* [1971] 1 W.L.R. 882, [1971] 1 Lloyd's List L.R. 487 (coverage excluded under a similar clause narrower and slightly more favorable to insured).

■ The War Risk policy also does not apply in the present case because the coverage is limited to the risks of war. Paragraph One of the policy states:

This insurance, is only against the risks of capture, seizure, destruction or damage by men-of-war, piracy, takings at sea, arrests, restraints, detainments and other warlike operations and acts . . . in prosecution of hostilities or in the application of sanctions under international agreements, whether before or after declaration of war and whether by a belligerent or otherwise, including factions engaged in civil war, revolution, rebellion or insurrection, or civil strife arising therefrom . . . .

Thus, a cursory reading of the War Risk policy indicates that it does not cover the loss in this case, because the sale of the goods was a seizure under customs regulations and because the loss was not war-related. Since coverage was excluded both under the Open Cargo and War Risk policies, defendant's motion for summary judgment is hereby granted and this cause is dismissed.[2]

1. Defendant's argument regarding the "Sue, Labor and Travel" clause is not considered for purposes of this discussion, however, the Court notes that the six month delay between the seizure and the sale by customs officials and the failure of plaintiff to do more than request the documents be forwarded to its Arabian bank raises the issue of the reasonableness of Resin's efforts to protect the insured property in order to minimize or prevent a loss covered by the insurance. *See Fishing Fleet, Inc. v. Trident Insurance Co.,* 598 F.2d 925, 929 (5th Cir. 1979); *Continental Food Products, Inc. v. Insurance Company of North America,* 544 F.2d 482 (5th Cir. 1977); *Intermondale Trading Co., supra.*

2. Third-party defendant Saudi National Lines' motion for summary judgment and Fidelity's motion for reconsideration of a protective order granted by this Court are dismissed as being moot.