BLAINE RICHARDS & CO., INC., Plaintiff-Appellant,

v.

MARINE INDEMNITY INSURANCE COMPANY OF AMERICA and William H. McGee & Co., Inc., Defendants-Appellees.

No. 149, Docket 80–7366.

United States Court of Appeals, Second Circuit.

Argued Oct. 3, 1980.

Decided Dec. 17, 1980.

Stephen H. McReavy, San Francisco, Cal. (Hall, Henry, Oliver & McReavy, P. C., San Francisco, Cal., Bernard Goldstein, Goetz & Goldstein, P. C., Mineola, N. Y., of counsel), for plaintiff-appellant.

Seymour Simon, New York City (Graham & Simon, P. C., New York City, of counsel), for defendants-appellees.

Before LUMBARD, OAKES and NEWMAN, Circuit Judges.

LUMBARD, Circuit Judge:

Plaintiff Blaine Richards & Co., Inc. ("Blaine Richards")[1] appeals from an order of summary judgment entered against it by Judge Nickerson in the Eastern District of New York. Blaine Richards brought suit upon marine insurance policies issued by the defendant for losses sustained in regard to a shipment of beans from Europe which had been detained upon arrival in this country by order of the United States Food and Drug Administration ("FDA"). Judge Nickerson held that FDA detention was excluded from the coverage of the insurance policies, and therefore no damages could be recovered. While we agree that the detention itself fell within the exclusion of the policies, and therefore agree with the district court regarding losses resulting from detention, we believe that the case must be remanded to determine whether losses were sustained as a result of physical damage to the insured goods.

I.

Blaine Richards purchased 10,400 bags of pea-beans from a supplier in France. The beans were packed in shipping containers in Dunkirk and sent overland to Antwerp from where they were shipped to Baltimore. Because the beans had originally been harvested sometime earlier in Ethiopia and Chile, the terms of sale provided that the supplier would arrange to have the beans fumigated prior to the ocean voyage. Contrary to Blaine Richards' instructions, however, the fumigation company hired by the supplier applied the fumigant Phostoxin, a pesticide widely used in Europe, but not approved by the FDA.

The beans arrived at Baltimore in two shipments and were inspected upon arrival by an FDA official. He discovered an empty can of Phostoxin in one of the shipping containers as well as some powder on some of the bags of beans. On February 24, 1976, the FDA, after confirming the presence of Phostoxin, issued a Notice of Detention stating that the shipment was "adulterated" within the meaning of Section 801(a)(3) of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 381(a)(3), since no regulation existed for the use of the discovered pesticide.

The detention notice gave Blaine Richards 10 days to respond. Six weeks later, it made an application for permission to segregate, clean and rebag the beans which were found with Phostoxin residue. The FDA approved the plan. It immediately released the 9,387 "clean" bags, and agreed to the reconditioning and release of the remaining 1,013 bags. Aside from the money spent upon reconditioning, plaintiff lost money when the original sales contracts for the beans were cancelled, and the beans had to be sold at lower prices.

Blaine Richards held two marine insurance policies relating to the shipments. The first insured the cargo against "all risks of physical loss or damage from any external cause." This "all risks" policy, however, included a standard Free from Capture and Seizure ("F.C.&S.") Clause which excluded from coverage all losses due to "capture, seizure, arrest, restraint, detainment, confiscation, pre-emption, requisition or nationalization, and the consequences thereof or any attempt thereat, whether in time of peace or war and whether lawful or otherwise." It also included a Delay Clause excluding coverage of claims "for loss of market or for loss, damage or deterioration arising from delay, whether caused by a peril insured against or otherwise." The second policy was a War Risk policy which generally insured against those

---

1. On appeal, the insurer has asserted that Blaine Richards, the only plaintiff of record, is bringing suit for damages actually suffered by a California concern, Klein Brothers, who allegedly purchased the beans from Blaine Richards and whose contracts for resale of the beans were subsequently cancelled. The insurer argues that only damages sustained by Blaine Richards may be awarded in this suit. We leave this issue to the district court to decide upon remand. In this opinion, we will refer only to Blaine Richards as the party seeking indemnity for losses sustained.

risks excluded by the F.C.&S. Clause. This policy, however, excluded damages caused by either "[s]eizure or destruction under quarantine or customs regulations" or "[d]elay, deterioration and/or loss of market."

Suit was brought upon these policies in the Eastern District. Blaine Richards claimed that the damages sustained were the result of improper fumigation, a fortuitous external event which resulted in the physical loss of the beans during the period of detention and in the cancellation of its sales contracts. The insurers defended on a number of grounds—that the damages did not arise during the period of coverage of the policies, that the damages related to "inherent" or "internal" defects in the shipped goods, that there was a failure of notice, that the suit was untimely, that the suit was solely for damages due to delay, that there was a failure to mitigate damages, and that the damages fell into the exemptions noted above. On motion for summary judgment, Judge Nickerson held that recovery was barred by the F.C.&S. Clause of the "all risks" policy and the "customs regulation" exemption of the War Risks policy. He held that the F.C.&S. Clause was not limited to exclusion of perils of a "warlike nature" but applied as well to risks of detention by civil authorities. Therefore, summary judgment for the insurers was deemed appropriate.

## II.

Blaine Richards seeks reversal of the judgment for two reasons. First, it argues that the F.C.&S. Clause was not intended to exclude the risk of detention by civil authorities in peaceful circumstances. We disagree. As Judge Nickerson pointed out, prior cases have consistently applied the F.C.&S. Clause to detention by civil authorities. In *Intermondale Trading Co. v. North River Insurance Co.*, 100 F.Supp. 128 (S.D. N.Y.1951), a vessel transporting insured tires was detained by British officials at Gibraltar because it was suspected that the ship was also illegally carrying refugees bound for Palestine. The detention, held to

be the principal cause of whatever losses were sustained, was found to fall within the F.C.&S. exemption. Similarly, in *Nakasheff v. Continental Insurance Co.*, 89 F.Supp. 87, 1954 A.M.C. 986 (S.D.N.Y.1953), recovery was not allowed for damages sustained during a period of detention by United States customs authorities. Admittedly, the language in *Nakasheff* stating that the F.C.&S. Clause there defeated any claim for damages arising during detention was, strictly speaking, unnecessary to the result since the district court had also held that the damages claimed were caused by the "inherent characteristics" of the transported goods. Nevertheless, the language of *Nakasheff* as to the applicability of the F.C.&S. Clause has been followed recently in *Resin Coatings Corp. v. Fidelity & Casualty Co. of New York*, 489 F.Supp. 73 (S.D. Fla.1980), in which the F.C.&S. Clause was held to bar recovery for losses due to a seizure by Saudi Arabian customs officials.

We think the consistent line of authority on this point should be followed here. Although the F.C.&S. Clause may have originally been inserted in marine policies to protect against risks of war, *see generally* G. Gilmore & C. Black, *The Law of Admiralty* § 2–9, at 71–73 (2d ed. 1975), its interpretation in recent years to include seizure or detention by civil authorities seems consistent with the general purposes of the Clause, which is to exclude from coverage losses arising from unforeseeable actions of sovereign states against the insured vessel or, in the case of a policy such as this one, the insured cargo. Moreover, the language of the Clause itself declares that such seizures or detentions in time of peace as well as in time of war are to come within the exemption.

Relying upon language in *Flota Mercante Dominicana v. American Manufacturers Mutual Insurance Co.*, 272 F.Supp. 540 (S.D. N.Y.1967), Blaine Richards, however, argues that even if detention by civil authorities falls within the F.C.&S. exemption, the FDA "hold" does not qualify as a "seizure" or "detention" because there was no adverse possession of the insured goods assert-

ed by the United States. This reading of the terms "seizure" and "detention" is unduly restrictive. In *Flota Mercante* the court held that the sinking of a ship by United States forces did not constitute a "seizure" or "detention." In so holding, the court quite properly relied upon the common sense understanding of those terms. 272 F.Supp. at 543. The common sense understanding of those terms here compels the result that an FDA "hold" constitutes a "seizure" or "detention" of the vessel and its cargo.

Blaine Richards further argues that even if the detention falls within the F.C.&S. Clause, coverage should still be found under the War Risks policy. We agree with the district court, however, that the losses resulting from detention fall within the exemptions of that policy. Although FDA regulations are not technically United States Customs Regulations, which are issued by the United States Customs Service pursuant to the Customs statutes set out in Title 19 of the United States Code, we believe that the phrase "customs regulations" in the War Risks policy should be construed in a reasonable manner which would give proper effect to the intentions and expectations of the parties. Therefore, detention due to regulations concerning imported food should be regarded as "customs regulations." Also, the specific exemption of "customs regulations" from the War Risks policy suggests that such detention falls within the general provisions of the War Risk policy and hence within the F.C.&S. Clause of the "all risks" policy.

### III.

Having held that detention by the FDA falls within the exemptions of the two policies, we must reach Blaine Richards' second and more troublesome objection to the decision below. Blaine Richards argues that even if detention falls within the exemptions, the "proximate cause" of its losses was not the detention itself but the improper fumigation with Phostoxin. It supports this claim by asserting that *but for* the improper fumigation, the FDA detention would not have occurred, and none of the losses would have been sustained.

We do not agree that proximate cause in insurance matters is to be determined by resort to "but for" causation. As this Circuit has noted, "the horrendous niceties of the doctrine of so-called 'proximate cause,' employed in negligence suits, apply in a limited manner only to insurance policies." *New York, New Haven & Hartford R. Co. v. Gray*, 240 F.2d 460, 465 (2d Cir. 1957). Instead, in such cases we have looked at the reasonable understanding of the parties as to the meaning of their insurance agreements. *Cf. Bird v. St. Paul Fire & Marine Insurance Co.*, 224 N.Y. 47, 120 N.E. 86 (1918) (Cardozo, J.) ("The question is not what men ought to think of as a cause. The question is what they do think of as a cause.")

This approach has led us, in cases of marine insurance, to apply rather strictly the doctrine of *causa proxima non remota spectatur* ("the immediate not the remote cause is considered"), and hence we have not attempted to trace the origin of losses back to their remote causes. *See, e. g., Pan American World Airways, Inc. v. Aetna Casualty & Surety Co.*, 505 F.2d 989, 1006–07 (2d Cir. 1974) (although an aircraft insurance and therefore a diversity case); *Flota Mercante Dominicana v. American Manufacturers Mutual Insurance Co.*, 312 F.Supp. 58, 60–61 (S.D.N.Y.1970). At the same time, the single cause nearest to the loss in time should not necessarily be found to be the proximate cause. *See Lanasa Fruit Steamship & Importing Co. v. Universal Insurance Co.*, 302 U.S. 556, 58 S.Ct. 371, 82 L.Ed. 422 (1938). Instead, in accord with the reasonable understandings and expectations of the parties, we must attempt to ascertain what the Supreme Court has referred to as the "predominant and determining" or the "real efficient" cause of the loss. *See, e. g., Standard Oil Co. of New Jersey v. United States*, 340 U.S. 54, 58, 71 S.Ct. 135, 95 L.Ed. 68 (1950); *Lanasa Fruit Steamship, supra*, 302 U.S. at 565, 58 S.Ct. at 375. Determination of proximate cause in these cases is thus a matter of applying

common sense and reasonable judgment as to the source of the losses alleged.

▮ In order to apply these principles to the case at hand it is first necessary to determine the precise nature of the losses sustained. Blaine Richards apparently relies upon two items of monetary damages: first, money spent reconditioning the beans in bags found covered with Phostoxin powder, and second, losses incurred when original sales contracts were cancelled and the beans had to be sold for less. To come within the terms of the "all risks" policy, however, Blaine Richards must allege "physical loss or damage." The pleadings are not clear on the exact loss or damage relied upon. Since various issues of fact which would be relevant to determining the nature of the losses were in dispute below and were not resolved by the district court, we believe that it is necessary to remand the case for further findings.

There appear to be two possible theories of "physical loss or damage," each of which we hold has different implications as to proximate cause. The first theory, put forth more clearly by Blaine Richards in its brief on appeal, is that it suffered a "physical loss" of the beans during the period of detention. We have little question, however, that the proximate cause of any temporary loss of the beans was the FDA detention and not the fumigation. If such a loss is the only one found, we do not believe that it would be proper to trace the loss back to the fumigation. In cases involving detention, courts have generally not followed losses back to prior events. *See, e. g., Pan American, supra; Resin Coatings, supra; Intermondale, supra.* The temporary loss of the beans is related to the fumigation only in a "but for" sense, yet we have already noted that such a relationship should not be found determinative for purposes of proximate cause. Instead, we would rely upon the common sense understanding that the temporary physical loss of the beans was caused by detention.

The only case cited by Blaine Richards in support of its claim that the proximate cause of loss should be traced to events prior to detention is *Fishing Fleet Inc. v. Trident Insurance Co. Ltd.,* 598 F.2d 925 (5th Cir. 1979). In *Fishing Fleet,* however, the court found that the insured ship was a "total constructive loss *prior to seizure.*" Id. at 928 (emphasis added). Thus, *Fishing Fleet* has no relevance where the loss claimed is the loss of insured goods during the seizure or detention itself.

While we would therefore affirm the judgment below if the only loss relied upon were the temporary physical loss of the insured goods, we cannot say that this was the only loss to the plaintiff. The pleadings in the district court suggest that Blaine Richards was also seeking coverage for "damage" to its cargo due to the contamination of beans with Phostoxin residue. The fumigation of beans with a substance not acceptable in this country would seem to fall within the term "damage." The fact that the beans were not marketable in this state suggests that they were damaged in an important respect.[2]

Moreover, it seems almost self-evident that such damage cannot be considered a result of the detention. Rather plainly, any such damage to the physical condition of the beans was caused by the fumigation. As in *Fishing Fleet, supra,* such damage occurred prior to detention and therefore the F.C.&S. Clause presents no obstacle to recovery.

As to possible damages recoverable under such a theory, it seems clear that no dam-

---

**2.** There appeared to be disagreement below whether the beans had been fumigated in an improper manner, in addition to having been fumigated with an unacceptable fumigant. Although, if the beans were fumigated improperly, the claim of physical damage to the beans would be more apparent, we do not believe that the issue is determinative as to whether the alleged losses are recoverable. If only the wrong fumigant was employed, there would still be "damage" to the beans in the sense that the FDA required reconditioning and, as may be found on remand, the condition of the beans required sale at a lower price. So long as it is proven on remand that the condition of the beans resulted in reconditioning expenses or in lesser sales revenue, damages could be recovered.

ages may be recovered in relation to the 9,387 bags of beans regarded as "clean" by the FDA unless it can be shown that the original purchasers rejected these beans due to their physical condition.[3] Absent such a showing, no recovery may be had since the loss to Blaine Richards would be attributable solely to delay caused by detention. As noted above, recovery for delay due to detention is barred by both the F.C.&S. and Delay Clauses.

As to the beans found with residue by the FDA, once again the exemptions of the policies, as we have construed them, would preclude recovery for damages caused by delay in shipment due to FDA detention. Damages for reconditioning of the beans could be awarded as necessitated by the physical damage to the beans caused by fumigation. If, even after reconditioning, the original purchaser rejected these beans because of their physical condition, however, the exemptions would pose no bar to recovery.

To conclude, on remand the district court must determine whether any of the beans were "damaged" by contamination with Phostoxin such that contracts were cancelled due to such contamination or whether cancellation was merely the result of delay. If delay was the only cause, then no "damage" to the beans existed when sold, and Blaine Richards cannot recover for the losses sustained upon resale at a lesser price. Damages for reconditioning, however, could be assessed and awarded. The insurers are free, nonetheless, to raise other objections not based upon the exemptions discussed here, such as whether the losses were brought about by "internal" or "external" causes and whether the policy of insurance here in question was in force at the time of fumigation, which might preclude recovery altogether.

Affirmed in part, reversed in part, and remanded.

3. There is a letter in the record from Klein Brothers to Blaine Richards asserting that the cause of cancellation was the contamination with Phostoxin. Since Klein Brothers appears to be an interested party, the letter should be regarded with some skepticism. It would be relevant on this issue whether the eventual

purchaser paid less than the then-prevailing market price, and whether the market price had declined from the time of the original sales contract. In any event, we believe it best if this factual issue were to be decided upon remand and not settled at this point.