**COMMODITIES RESERVE CO.,**
**Plaintiff–Appellant,**

v.

**ST. PAUL FIRE & MARINE INSURANCE CO., Defendant–Appellee.**

No. 88–1659.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 12, 1989.

Decided July 10, 1989.

Eric Danoff, Graham & James, San Francisco, Cal., for plaintiff-appellant.

Marc J. Derewetzky, Derby, Cook, Quinby & Tweedt, San Francisco, Cal., for defendant-appellee.

Before FARRIS, BOOCHEVER and HALL, Circuit Judges.

FARRIS, Circuit Judge:

Commodities Reserve, the plaintiff-appellant, seeks reimbursement from defendant-appellee St. Paul, its marine insurer, for expenses incurred in forwarding cargo from Crete to Venezuela, including certain litigation costs in Crete. Commodities Reserve incurred the expenses in order to avoid losses from infestation while the vessel carrying its cargo was detained by Greek authorities. St. Paul refused to pay because the policy excludes losses arising from detainment. The district court granted summary judgment for St. Paul. We affirm in part, reverse in part, and remand.

## BACKGROUND

Commodities Reserve contracted to sell approximately 1,008 tons of chickpeas (aka garbanzo beans) and 50 tons of cumin seeds to purchasers in Venezuela. Commodities Reserve purchased the chickpeas and cumin seeds in Turkey, and chartered space on the M/V West Lion to carry its cargo from Mersin, Turkey to Puerto Cabello, Venezuela. The West Lion was owned by Maritime Shipping Corp., and chartered to Carimed Shipping Lines, Ltd. Commodities Reserve subchartered its space from Carimed and had no involvement in the management or operation of the vessel. The cargo was insured under the provisions of a 1983 Ocean Marine Open Cargo Policy issued by St. Paul to Klein Bros., the parent company of Commodities Reserve.

The cargo was loaded aboard the West Lion in March 1986. After departure from Turkey, the crew repainted the vessel's name to the Capt. Vlassis and put into Ashdod, Israel, where they loaded a cargo of munitions. Commodities Reserve was not involved in the carriage of the munitions. After leaving Ashdod, while sailing through Greek waters, the crew repainted the vessel's name back to the West Lion. Greek authorities arrested the vessel and its captain for violating Greek regulations concerning the carriage of munitions in Greek waters. Although Commodities Reserves' cargo itself was not detained, the shipowner refused to release it without a waiver of liability. In May 1986 Commodities Reserve obtained an order from a Crete court releasing the cargo, and arranged for transshipment aboard the Kirsten TH, which sailed for Venezuela in June 1986.

During the transloading of the cargo in Crete, Commodities Reserve and St. Paul had surveyors and agents inspect the cargo. Some bags had torn or were water damaged, but the cargo was in generally sound condition with no evidence of infestation. The Kirsten discharged the cargo in Venezuela at the end of June 1986.

Commodities Reserve unsuccessfully sought reimbursement from St. Paul for the freight costs of the substitute vessel; survey, stevedore, and agent expenses in Crete; and costs of the Crete litigation to release the cargo. Commodities Reserve then filed suit under the diversity jurisdiction of the district court in December 1986. District Court Judge Vukasin entered orders granting summary and final judgment on January 28, 1988.

## POLICY PROVISIONS

Commodities Reserve primarily seeks recovery under the Sue & Labor Clause of its insurance contract with St. Paul, which provides:

In case of any loss or misfortune, it shall be lawful and necessary to and for the Assured ... to sue, labor and travel for, in and about the defense, safeguard and recovery of the said goods and merchandise ... to the charges whereof, the [insurer] will contribute according to the

rate and quantity of the sum hereby insured.

This standard provision requires the insurer to reimburse the assured for expenses incurred in preventing a loss for which, if it had occurred, the insurer would be liable. *See St. Paul Fire & Marine Ins. Co. v. Pacific Cold Storage,* 157 F. 625, 626, 629 (9th Cir.1907); *see also* 1 A. Parks, *The Law and Practice of Marine Insurance and Average* 632 (1987). Commodities Reserve also seeks reimbursement under the clause entitled "Warehousing And Forwarding Charges Packages Totally Lost Loading, Etc.," which provides that the insurer "agrees to pay any landing, warehousing, forwarding, and special charges for which this Policy in the absence of [any average] warranty would be liable."

The Average Clause is the general basis for liability. It provides that the policy covers "all risks of physical loss or damage from any external cause excepting those risks excluded by the F.C. & S. [Free of Capture & Seizure] and S.R. & C.C. [Strikes, Riots & Civil Commotions] Clauses...."

The F.C. & S. Clause, one of the Paramount Warranties, declares that:

Notwithstanding anything herein contained to the contrary this insurance is warranted free from: (a) capture, seizure, arrest, restraint, detainment, confiscation, preemption, requisition or nationalization, and the consequences thereof or any attempt thereat, whether in time of peace or war and whether lawful or otherwise....

St. Paul argues that the F.C. & S. Clause and an additional Paramount Warranty, the Delay Clause, excuse it from liability. The Delay Clause provides that the insurer is not liable "for loss, damage, or deterioration arising from delay, whether caused by a peril insured against or otherwise, unless expressly assumed in writing hereon."

At oral argument, Commodities Reserve stated that the provisions concerning deviation contained in the Deviation Clause and the Marine Extension Clauses make St. Paul liable for its losses. The Deviation Clause provides that "[t]his insurance shall not be vitiated ... by deviation, over-carriage, change of voyage, transshipment or any other interruption of the ordinary course of transit from causes beyond the control of the Assured." The Marine Extension Clauses provide that the goods are covered during "[d]eviation, delay beyond the control of the Assured, forced discharge, reshipment and transshipment."

## DISCUSSION

The district court's grant of summary judgment is reviewed de novo. *Eisenberg v. Insurance Co. of North America,* 815 F.2d 1285, 1288 (9th Cir.1987). Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). No material facts are in dispute. The case turns on the interpretation of policy terms, which may be determined as a matter of law by the court. *See United States v. King Features Entertainment, Inc.,* 843 F.2d 394, 398 (9th Cir. 1988). Because federal admiralty law adequately covers this area, we need not consider state law. *See Bohemia, Inc. v. Home Insurance,* 725 F.2d 506, 509–10 (9th Cir.1984); *cf. Lien Ho Hsing Steel Enterprise v. Weihtag,* 738 F.2d 1455, 1458 (9th Cir.1984) ("In the absence of federal admiralty law on [a marine insurance] issue, the law of the state with the greatest interest in the issue controls.")

### A. *Proximate Cause*

The fundamental question in this case is one of proximate cause. If a loss is proximately caused by an event covered by the policy, the insurer is liable. If the loss is caused by an event excluded from coverage, the insurer is not liable. *See* 1 Parks, *supra,* 22, 124. Similarly, expenses reasonably incurred to avoid a loss that would be covered under the policy may be reimbursed under the Sue & Labor Clause, but only if the avoided loss would have been covered. *See* Parks, *supra,* 632–37; 2 M. Mustill & J. Gilman, *Arnould's Law of Marine Average and Insurance* §§ 908–10 (1981). St. Paul argues that if infestation had occurred following the transloading in

Crete the detention by Greek authorities would have been the proximate cause of the potential loss; because the Free of Capture & Seizure Clause excludes losses arising from detention, the expenditures to prevent the potential infestation loss are not covered. Commodities Reserve argues that because infestation is a covered peril, its expenditures to prevent that loss are covered. St. Paul accepts for purposes of this appeal Commodities Reserve's contention that it forwarded its cargo from the West Lion to avoid the risk of infestation. Nor does St. Paul argue that infestation itself is not a covered risk under the policy.

Proximate cause in marine cases is defined as "that cause most nearly and essentially connected with the loss as its efficient cause." *Standard Oil Co. v. United States*, 340 U.S. 54, 58, 71 S.Ct. 135, 137, 95 L.Ed. 68 (1950) (quoting *Dole v. New England Mut. Ins. Co.*, 7 Fed.Cas. 837, 853 (C.C.Mass.1864) (No. 3966)). The cause nearest in time to the event is not necessarily the proximate cause. *Lanasa Fruit Steamship & Importing Co. v. Universal Ins. Co.*, 302 U.S. 556, 562–63, 58 S.Ct. 371, 373–74, 82 L.Ed. 422 (1938). "Determination of proximate cause in these cases is thus a matter of applying common sense and reasonable judgment as to the source of the losses alleged." *Blaine Richards & Co. v. Marine Indemnity Ins. Co.*, 635 F.2d 1051, 1054–55 (2d Cir.1980). Where a loss results from a combination of causes, one of which is excluded from coverage, courts generally isolate a single peril as the dominant or efficient one. 1 Parks, *supra*, at 413.

Several cases discuss the issue of proximate cause in similar but not identical circumstances. In *Blaine Richards*, a cargo of beans shipped from Europe had been fumigated with a pesticide not approved by the Food and Drug Administration. The FDA, after inspecting the beans upon their arrival in Baltimore, issued a Notice of Detention. The plaintiff shipper claimed its costs of reconditioning the beans to meet FDA approval and the damages resulting from the cancellation of the initial sales contracts. The defendant insurer was awarded summary judgment on the grounds that the Free of Capture & Seizure Clause excluded risks arising from detention. *Blaine Richards*, 635 F.2d 1052–53. On appeal, Blaine Richards argued that the proximate cause of the losses was not the detention but the improper fumigation, because "but for" the improper fumigation, the loss would not have occurred. *Id.* at 1054. The Second Circuit stated that it would reject Blaine Richard's argument if the temporary loss of the goods was the only loss, as opposed to damage to the physical condition of the beans from the improper fumigation. *Id.* at 1055. It stated that any actual physical damage to the beans should be considered caused by the improper fumigation and not the detention. *Id.* The panel instructed the district court to "determine whether any of the beans were 'damaged' by contamination such that contracts were cancelled due to such contamination or whether cancellation was merely the result of delay." *Id.* at 1056. If delay was the only cause of damage, then Blaine Richards would be prohibited from recovering. *Id.*

If damage from infestation had occurred prior to the detention, St. Paul would be liable. But *Blaine Richards* does not answer the question presented here of whether a loss, otherwise covered, that occurs after detention and would not have occurred without that detention is excluded by the Free of Capture & Seizure Clause.

In *OPE Shipping, Ltd. v. Allstate Ins. Co.*, 687 F.2d 639 (2d Cir.1982), *cert. denied*, 460 U.S. 1069, 103 S.Ct. 1523, 75 L.Ed.2d 946 (1983), ships under the control of Nicaragua General Anastasio Somoza were taken over by Sandanistas. After the Sandanistas assumed control of the government, the ships were attached and purchased at a judicial sale by a government agency for the amount of port charges owed the government. *OPE Shipping*, 687 F.2d at 640–41. OPE argued that its losses were the result either of a covered marine risk—barratry—or of war risks, covered under a separate policy. *Id.* at 641. The insurers argued that the loss resulted from acts excluded from both policies by the Free of Capture & Seizure Clause. *Id.* at

642. The panel found that the barratrous conduct of the crew was the result of the civil war, and therefore was excluded from coverage under the marine risks policy but within the coverage of the war risks policy. *Id.* at 642. Because the Sandanistas were not yet the government when the crew seized the vessels, the court determined that the Free of Capture & Seizure exclusion did not apply. *Id.* at 642–43. In examining the question of what was the proximate cause of the loss of the ships, the court looked to the underlying civil war, and not the specific barratrous acts that occurred as a result of the war. *Id.* at 641–42. The underlying cause for any potential infestation of the West Lion's cargo would be the vessel's detention in Crete.

In *Intermondale Trading Co. v. North River Ins. Co. of N.Y.*, 100 F.Supp. 128 (S.D.N.Y.1951), a ship carrying a cargo of tires from Jacksonville, Florida, to Genoa, Italy, was detained for six months by the authorities at the Port of Gibralter because the vessel was suspected of aiding illegal immigration to Palestine. *Id.* at 130. The tires were abandoned by Intermondale during the detention. *Id.* Intermondale argued that the carrier's failure to transship was the cause for the loss. *Id.* at 131. The court held that the principal cause of the loss was the detainment by the Governor of Gibralter and that the insurer was not liable because that risk was excluded from coverage by the Free of Capture & Seizure Clause. *Id.* at 132. Commodities Reserve distinguishes the case by pointing out that Intermondale made no effort to transship. The case does not provide unambiguous support for St. Paul in this case because no separate covered peril, such as infestation, was at issue.

In *Lanasa,* a ship stranded and lost its cargo of bananas because they became overripe. 302 U.S. at 557, 58 S.Ct. at 371–72. The Court found that the stranding, a covered risk, and not the inherent vice of the bananas, an excluded risk, was the proximate cause of the loss. *Id.* at 572, 58 S.Ct. at 378. The Court discussed at length a number of British and U.S. cases, *id.* at 562–72, 58 S.Ct. at 373–78, supporting the view that the underlying event that alters the voyage, and not the events following that change, is the proximate cause of losses occurring after the change. *See, e.g., Peters v. Warren Ins. Co.,* 39 U.S. (14 Pet.) 99, 110, 10 L.Ed. 371 (1840) (proposing hypothetical: if vessel shipwrecked, then set on fire by natives, shipwreck and not fire would be proximate cause of loss by fire); *Magoun v. New England Marine Ins. Co.,* 16 F.Cas. 483, 486 (C.C.Mass.1840) (Story, J.) ("If there be a capture, and before the vessel is delivered from that peril, she is afterwards lost by fire, or accident or negligence of the captors, I take it to be clear that the whole loss is properly attributable to the capture.").

■ The dominant cause of the potential loss from infestation was the detention in Crete. Commodities Reserve forwarded the cargo only because it was detained. No danger from infestation existed apart from the detention. Although transshipment may have been a prudent move because of the potential for infestation, the need to transship only existed because the ship had been detained. Commodities Reserve presents no evidence that infestation might have occurred apart from the detention. No other event or circumstance underlies the concern over infestation and the transshipment. Although St. Paul is liable for expenses incurred to prevent the covered risk of infestation, in this case the dominant cause for the transshipment expenses was the detention, not the prevention of infestation.

■ We recognize that proximate cause generally is an issue for the jury. *Union Ins. Co. of Phila. v. Smith,* 124 U.S. 405, 8 S.Ct. 534, 31 L.Ed. 497 (1888) (question of whether proximate cause for loss of tug was initial breaking of shaft or sinking during subsequent towing properly put to jury); *Milwaukee, & St. Paul Ry. Co. v. Kellogg,* 94 U.S. (4 Otto) 469, 474–76, 24 L.Ed. 256 (1876) (question of proximate cause of destruction of building—negligence or fire—for jury); *see also Corey v. Jones,* 650 F.2d 803, 805–06 (5th Cir.1981); *Morrow v. Greyhound Lines, Inc.,* 541 F.2d 713, 719–20 (8th Cir.1976) (automobile

accident cases). However, when material facts are not at issue, the question of proximate cause may be settled as a matter of law. *See, eg., OPE Shipping*, 687 F.2d at 641–42. Here, both parties agree that no material facts are in dispute. Neither party argues that the issue of proximate cause should be presented to a jury. Both agree that the issues in the case may be resolved by summary judgment as a matter of law.

■ Commodities Reserve also argues that the Free of Capture & Seizure Clause does not apply because the ship, and not the cargo, was detained. The clause does not require that the insured item specifically be detained, if the ship carrying the cargo is detained and that detention is the proximate cause of the loss. *See Olivera v. Union Ins. Co.*, 16 U.S. (3 Wheat.) 183, 189–90, 4 L.Ed. 365 (1818) (blockade); *Intermondale*, 100 F.Supp. at 131–32. "Where the insured property is detained, not by government action specifically directed at that property, or to that end, but by forcible means which have the same consequences, that also constitutes the operation of a restraint." 2 M. Mustill and J. Gilman, *Arnould's Law of Marine Insurance and Average* § 889 (1981).

## B. *Litigation Expenses*

■ Commodities Reserve's claim for litigation expenses incurred to secure the release of the cargo involves different circumstances from those pertaining to the transshipment of cargo. When the Greek authorities detained the ship they did not claim jurisdiction over Commodity Reserve's cargo. *Compare Blaine Richards*, 635 F.2d at 1052 (FDA issued notice of detention against the fumigated beans and not the ship). Instead, the captain refused to release the cargo. Due to the captain's conduct, Commodities Reserve had to secure a court order compelling the release of its cargo. The litigation expenses incurred to release the cargo are recoverable under the Average Clause, which covers "all risks of physical loss or damage from any external cause." *See Champion Int'l Corp. v. Arkwright–Boston Mfr. Mutual Ins. Co.*, 1982 AMC 2496 (S.D.N.Y.), *aff'd*, 714 F.2d

112 (2d Cir.1982) (insured entitled to recover for expenses, including litigation, incurred to recover cargo after carrier converted it under policy insuring plaintiff against "all risk of physical loss or damage to its cargo from an external source"). The Sue and Labor Clause required Commodities Reserve to "sue … for … recovery of said goods and merchandise" in case of loss or misfortune, and mandates payment of the charges by the insured.

The detention by Greek authorities was not the proximate cause of the litigation expenses. The detention did not necessitate the suit in Crete. The litigation expenses were incurred solely because of the captain's refusal to release the cargo. Consequently, the Free of Capture and Seizure Clause does not preclude recovery of these expenses.

The district court erred in granting St. Paul summary judgment on this issue. Summary judgment for the litigation expenses should be awarded to Commodities Reserve on its cross-motion for summary judgment.

## C. *Additional Issues*

Commodities Reserve argues that its expenses may be recovered under the Warehouse Clause or as particular charges. Both of these contentions also rise or fall on the proximate cause issue. If the expenses are incurred to avoid a loss excluded from coverage, they are not recoverable. The authorities that Commodities Reserve cites in support of its arguments all assume the existence of a covered peril. *See* 2 Mustill & Gilman, *supra*, §§ 914A, 1132. Whether the Warehouse Clause or particular charges offer grounds for recovery in the absence of a Sue & Labor Clause, the question discussed by those authorities, is not the issue here.

■ Commodities Reserve raised two additional, related issues at oral argument. First, it argues that when policy provisions conflict, a clause providing coverage should prevail. We need not reach that question, because the Free of Capture & Seizure Clause is listed as a Paramount Warranty and specifically states that it is not super-

ceded by by other provisions that provide coverage. Second, it argues that the deviation provisions found in the Deviation Clause and the Marine Extension Clauses cover the loss and make an inquiry into proximate cause unnecessary. These provisions merely continue the coverage provided by the policy in the event the route taken by the vessel is altered. The deviation provisions do not negate the policy exclusions but continue the policy in the event of a change in voyage. *See,* Mustill & Gilman, *supra,* at §§ 465–67. The loss for which compensation is sought must still be covered under the policy. If the loss is excluded from coverage by the Free of Capture & Seizure Clause, it cannot be separately covered under the Deviation and Marine Extension Clauses.

## CONCLUSION

The district court's grant of summary judgment for the transshipment expenses was proper because as a matter of law the proximate cause for those was the detention in Crete, a risk excluded from policy coverage by the Free of Capture & Seizure Clause. Commodities Reserve is entitled to summary judgment for the litigation expenses incurred in recovering the cargo from the detained ship. Neither side is awarded costs on appeal.

AFFIRMED in part, REVERSED in part, and REMANDED.